UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAMUEL KENNETH PORTER,**<br>Plaintiff,<br>v.<br>**NURSE HOWARD et al.,**<br>Defendants. | CASE NO. 10cv1817 JLS (PCL)<br><br>**AMENDED REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff Samuel Kenneth Porter ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint on August 30, 2010 against the California Department of Corrections and Rehabilitation ("C.D.C.R."), its Internal Affairs Division, Nurse Howard, a nurse at Centinela State Prison, and A. Hernandez, a correctional officer at Centinela State Prison (collectively "Defendants") under Title 42, United States Code § 1983 for violations of his Eighth, Fifth, and Fourteenth Amendment rights. (Doc. 1.) Plaintiff filed a First Amended Complaint ("FAC") on November 23, 2010. (Doc. 13.) In his FAC, Plaintiff seeks injunctive relief, single cell status, and money damages. (Doc. 13, at 10.) Defendants filed a motion to dismiss the Complaint based on Plaintiff's failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act, for failure to state a claim upon which relief can be granted, and to strike all damages claims against Defendants Hernandez and Howard on grounds that they are entitled to immunity under the Eleventh Amendment. (Doc. 27, at 1.) Upon reviewing the FAC, Defendants' motion, and

Plaintiff's opposition, the Court recommends that Defendants' Motion to Dismiss be GRANTED and Motion to Strike be DENIED.

## BACKGROUND

Plaintiff alleges in his FAC that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by causing other inmates, who are related to Defendants Howard and Hernandez, to rape him in June of 2007 while he was housed at Centinela State Prison. (Doc. 13, at 3-4, 11-12.) He alleges that the rape was orchestrated by prison staff as retaliation for the Plaintiff having caused "Warden Derrick Allison and Chief Deputy Warden Stuart J. Ryan [to be] dismissed or fired." (Id.) Plaintiff accuses Defendants Howard and Hernandez of telling him that they would keep him until the statute of limitations expired, that they were going to teach him to "keep his mouth shut," and that they "had that done to him" for reporting embezzlement by the warden. (Doc. 13, at 3-4 and 12.)

In addition, Plaintiff alleges that Defendants violated his Fifth and Fourteenth Amendment rights by covering up the rape. (Doc. 13, at 5.) Plaintiff states that he made a report of the rape to prison officials and later filed an appeal, but that the C.D.C.R. did not provide him with a copy of the incident package CAC FDP-09-07-0349. (Doc. 13, at 5-8.) He alleges that the C.D.C.R. lost his crime incident report or has refused to place it in his file and that the C.D.C.R. knew ahead of time he would be raped. (Id.) He also claims that Defendant's actions caused him duress and that it is his "sincere belief that any normal thinking human being would be reluctant to report after this." (Doc. 13, at 12.)

In addition to his allegations of rape, Plaintiff also makes other generalized assertions related to the alleged cover up. Specifically, Plaintiff alleges that the C.D.C.R. trains its employees to be corrupt. (Id.) He argues that his cell wall should be forensically tested because the Defendants drilled a hole in the wall in order to place a camera for the purpose of video recording the alleged planned rape of Plaintiff and that the C.D.C.R.'s refusal to do so or to polygraph test himself or Defendants Howard and Hernandez proves that all Defendants coordinated a "cover up." (Id. at 5-6, 13.) Finally, Plaintiff alleges that he has various medical conditions impliedly resulting from his alleged rape, the tests for which have been lost by prison nursing staff. (Id. at 14.)

In short, Plaintiff claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by orchestrating a rape in retaliation for his whistle-blowing against a former

1  warden.  Plaintiff bases his Fifth and Fourteenth Amendment claims on an alleged cover up of the rape,
2  failure of the C.D.C.R. to provide copies of his incident report or to otherwise investigate the alleged rape
3  sufficiently, on an alleged statement that he would be kept "until the statute of limitations runs out," and on
4  allegedly being lied to by the C.D.C.R.  (Doc. 13,  at 5-6.)

5  Defendants moved to dismiss Plaintiff's FAC.  The motion has been fully briefed, opposition and
6  reply.  The present motion to dismiss is based on the following:  failure to exhaust all administrative
7  remedies as required by the Prison Litigation Reform Act; failure to state a claim because the C.D.C.R. is
8  immune from actions brought under 42. U.S.C. § 1983; failure to state a claim because refusal to grant
9  single cell status does not rise to the level of a violation of the Eighth Amendment; failure to state a claim
10 under the Fifth and Fourteenth Amendments because Plaintiff fails to allege membership in any protected
11 class or any disparate treatment that would give rise to a claim under the Fifth and Fourteenth Amendments
12 and, because Plaintiff fails to plead a liberty interest protected under the substantive due process law.  (Doc.
13 27, at 1-11.)  Defendants also moved to strike damages claims against Defendants Howard and Hernandez
14 on grounds that they are immune from all claims for damages.  (Id. at 14.)

15                                        STANDARD OF REVIEW

16 The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall
17 be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison
18 or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.
19 § 1997e(a).  Exhaustion in cases covered by § 1997e(a) is mandatory.  Porter v. Nussle, 534 U.S. 516, 524
20 (2002).

21 In prisoner § 1983 suits, a defendant's contention that a plaintiff failed to exhaust nonjudicial
22 remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an
23 unenumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a
24 motion to dismiss for failure to exhaust, the court may look beyond the pleadings and resolve disputed
25 issues of fact.  Id. at 1119-20; see Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365,
26 369 (9th Cir. 1988) (permitting the consideration of affidavits submitted by the parties on a motion to
27 dismiss for failure to exhaust non-judicial remedies.)
28

1  Non-exhaustion under the PLRA § 1997e(a) does not impose a pleading requirement, but creates a defense Defendants must plead and prove. Wyatt, 315 F.3d at 1119. If the court finds that the prisoner has failed to exhaust non-judicial remedies, the proper remedy is dismissal of the claim without prejudice. Wyatt, 315 F.3d at 1119.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. Navarro v. Block, 250 F. 3d 729, 732 (9th Cir. 2001). Dismissal is proper where the complaint does not have factual allegations sufficient to establish plausible as opposed to merely possible or speculative entitlement to relief. Bell Atlantic Corp. v. Twombly, 544 U.S. 555 (2007).

DISCUSSION

**I. Exhaustion**

Plaintiff does not argue that he exhausted his administrative remedies, but rather, argues he should not be required to do so because prison officials caused him duress. (Doc. 13, at 7.) Plaintiff admits in his Supplemental Response in Opposition to Defendants' Motion to Dismiss that he first complained of the alleged rape in July of 2009, two years after the alleged attack. (Doc. 39, at 65.)

Under the PLRA, "a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). A prisoner need not press on to exhaust further levels of review once he has either received all "available" remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available. Id. Relevant evidence demonstrating pertinent relief remained available includes "statutes, regulations, and other official directives that explain the scope of the administrative review process [as well as] documentary or testimonial evidence from prison officials who administer the review process." Id. at 937.

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs., tit. 15 § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels: "(1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections." Barry v. Ratelle, 985

1  F. Supp. 1235, 1237 (S.D. Cal. 1997). The third or "Director's Level" of review "shall be final and exhausts
2  all administrative remedies available in the Department [of Corrections]." <u>Irvin v. Zamora</u>, 161 F. Supp.
3  2d 1125, 1129 (S.D. Cal. 2001) (quoting Cal. Dep't of Corrections Operations Manual, § 54100.11, "Levels
4  of Review"). An appeal may be rejected at any level of review when it is "incomplete or necessary
5  supporting documents are not attached" to it. Cal. Code Regs., tit. 15, § 3084.3(c)(5). Finally, the
6  California Code of Regulations Requires that any grievance be made within 15 days of the offending event.
7  Cal. Code Regs. tit. 15, § 3084.6(c).

8  Courts construe § 1997e(a) broadly to "afford corrections officials time and opportunity to address
9  complaints internally before allowing the initiation of a federal case." <u>Porter</u>, 534 U.S. at 525. A prisoner's
10 grievances must be "sufficient under the circumstances to put the prison on notice of the potential claims
11 and to fulfill the basic purposes of the exhaustion requirement." <u>Irvin</u>, 161 F.Supp. 2d at 1135 (S.D. Cal.
12 2001). Thus, the primary purpose of the administrative appeal process is to notify the prison of a problem
13 and facilitate its solution. <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009) (exhaustion does not
14 require a prisoner to articulate legal theories or terminology, but does require the prisoner to provide enough
15 information to allow prison officials to take appropriate responsive measures.) Another major purpose of
16 the administrative remedy process is to create a factual record with temporal proximity to the claimed events
17 in order to facilitate court proceedings. <u>See</u> <u>Young v. Corrections Corp. of America</u>, (not reported in F.
18 Supp. 2d.) WL 1529408 (D. Mont., 2010)).

19      **A.**    **Plaintiff Is Not Excused from Exhaustion Required under PLRA Because the Prison Did Not Prevent Him from Exhausting His**
20            **Administrative Remedies.**

21 While exhaustion is mandatory, a plaintiff is excused from exhausting the prison grievance procedure
22 if he is prevented from doing so by the prison itself. <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1224-1225 (9th Cir.
23 2010). Administrative remedies may be unavailable if prison officials make serious threats of substantial
24 retaliation against the prisoner for filing a grievance such as by tearing up a formal grievance or threatening
25 transfer to another prison far away from prisoner's family if the prisoner continued to pursue the grievance.
26 <u>See</u> <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084-85 (11th Cir. 2008). If a plaintiff claims he was prevented from
27 exhausting by threats from prison staff, he must show "(1) the threat actually did deter the plaintiff inmate
28 from . . . pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable

inmate of ordinary firmness and fortitude from . . . pursuing the part of the grievance process that the inmate failed to exhaust." Turner, 541 F.3d at 1083.

The only evidence that Plaintiff offers in support of his argument that he should be excused from complying with the administrative remedy procedures is that prison officers "put him in" duress and "any normal thinking person would be reluctant to report." (Doc. 13, at 12.) Thus, Plaintiff asserts, two years after the alleged event, that he felt duress and therefore is excused from exhausting his administrative remedies with respect to his rape. He does not argue that he attempted to properly exhaust his administrative remedies. (Doc. 39, at 73.) In fact, in his opposition to Defendant's motion to dismiss he acknowledges that the grievance procedures were available, and states that he did not use them because the warden, administrators, and captains "know of incidents that occurred," and that he did not complete the appeals process because he could not "expect an unbias (sic) & candor (sic) result." (Id.)

In Nunez, a plaintiff was excused from the requirement to exhaust administrative remedies where he filed numerous requests for information he reasonably believed needed to timely file his appeal of an improper strip search, but the prison mistakenly referred him to the wrong materials. Nunez, 591 F.3d at 1228. That plaintiff made diligent efforts to request the materials and followed up promptly. He also filed grievances with respect to his efforts to obtain the needed materials.

No such events occurred here. The administrative appeal record supplied by the Defendants demonstrates that Plaintiff filed six separate grievances for other matters at Centinela State Prison, where he was an inmate when the rape allegedly occurred in June 2007. (Doc. 27-4, at 3.) None of these appeals mentioned a rape. Plaintiff also filed numerous other appeals at Ironwood and Corcoran. (Docs. 27-3, 27-7, and 27-10.) Plaintiff did not file a grievance for the alleged rape when he was transferred nearly a year after the rape to a different prison, where the duress he claims he felt would no longer have been present. (Doc. 27-3, at 3). He first mentioned the rape in an appeal filed in 2009 at Calipatria State Prison, (doc. 27-4, at 3) where plaintiff timely and properly filed at total of twelve appeals. (Doc. 27-7, at 7.) Thus, nothing in Plaintiff's history demonstrates that he was prevented by the prison from using the administrative remedies available to him.

Under similar facts, the District Court in Montana found that a plaintiff was not dissuaded from using non-judicial remedies, and therefore, had failed to exhaust administrative remedies where the plaintiff filed

1 a § 1983 suit for being beaten by another prisoner but only mentioned the beating in the context of administrative appeals for other subjects such as job loss, etc. Young, WL 1529408. The plaintiff in Young alleged that he had been threatened by prison staff and claimed that he was therefore was dissuaded from using the administrative remedy process, but the court found that his use of the appeals process for other issues demonstrated that he was not, in fact, dissuaded. Young, WL 1529408. Similarly, in addition to his extensive use of the appeals process for other matters, Plaintiff states that he confronted Defendant Howard about the rape and told her that he would tell on her and force her to take a polygraph. (Doc. 13, at 6.) Such behavior does not indicate a person placed in such a state of fear that he could not avail himself of the appropriate complaint process. Thus, Plaintiff cannot meet the first prong of the Turner test because he was not actually deterred from using the grievance process. See Ritza, 837 F2d at 369 (no presumptive truthfulness attaches to Plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.) For this reason, it is not necessary to determine whether a prisoner of ordinary firmness would be dissuaded from exhausting non-judicial remedies by the circumstances Plaintiff alleges.

**B. The PLRA Requires Proper Exhaustion by Compliance With Agency Procedures, and Plaintiff Failed to Properly Exhaust**

A prisoner is required to *properly* exhaust administrative remedies by complying with an agency's deadlines and other critical procedure rules. Woodford v. Ngo, 548 U.S. 81, 94-95 (2006) (emphasis added). When a prison denies an appeal as untimely, the prisoner is not entitled to file suit on matters raised in the untimely appeal. Id. at 90. The administrative record submitted by Defendants shows that the prison denied Plaintiff's first rape related grievance as untimely, therefore he may not now file suit based on those same matters. (Doc. 27-7, at 35-36.) In addition, Plaintiff's correspondence with other agencies, (docs. 13, and 39) does not equate to proper exhaustion. See Nunez, 591 F.3d at 1224.

In his opposition to Defendants Motion to Dismiss, Plaintiff adds the argument that he is exempt from exhaustion requirements because Defendants didn't properly process his allegations of rape under the Prison Rape Elimination Act ("PREA"). (Doc. 30, at 10-12.) However, compliance with the PREA by the C.D.C.R. is not a prerequisite for the requirement that prisoners comply with the PLRA by exhausting their administrative remedies prior to filing suit. Moreover, Plaintiff states in his opposition that the C.D.C.R. did prepare a PREA report within two weeks of his first report of the rape. (Id.)

For the foregoing reasons, even if all of Plaintiff's allegations are true, this suit is procedurally barred by his failure to timely file a grievance as required by the PLRA. See Woodford, 548 U.S at 113 (Stevens, J., joined by Souter, J., and Ginsburg, J., dissenting) (acknowledging that the PLRA, as interpreted by the majority, would create a procedural bar even in tragic cases where prisoner's Eighth Amendment rights are infringed when they are raped by guards or suffer a rape facilitated by guards).

### C. Plaintiff's Grievances Did Not Provide Prison Officials with Notice Nor Opportunity to Correct the Issue.

The purpose of the prison appeals process is to give prison officials notice of the problem and opportunity to correct it, as well as to create a factual record of the events in question. Irvin, 161 F. Supp. 2d at 1135. An inmate grievance does not exhaust issues not fairly set forth in the grievance. Morton v. Hall, 599 F.3d 942, 945-46 (9th Cir. 2010). Plaintiff filed numerous grievances, however, because these appeals did not seek any remedy for the rape, none of those grievances were sufficient to exhaust his administrative remedies as required by the PLRA. Plaintiff's sole appeal mentioning the rape focuses on his desire to be housed in a single cell due to nightmares and paranoia. (Doc. 27-7, at 30.) In that appeal, Plaintiff mentions the rape only parenthetically and states that he wishes to "sleep a good night [sic] sleep and feel safe." (Id.) In his opposition to Defendants present Motion to Dismiss, Plaintiff again focused on his desire to be housed in a single cell and additionally requests to be transferred to a different state. (Doc. 39, at 66.) Throughout the appeals process, Plaintiff repeatedly asked for polygraph testing of prison staff and of himself. (Id. , at 30, 37,-38). Therefore, the appeals filed by Plaintiff during his incarceration do not meet the exhaustion requirement because they failed to provide prison officials notice that Plaintiff sought punishment of Defendants for a rape, nor did his appeal provide any opportunity to correct the problem that is the subject of the present complaint - an alleged staff-orchestrated rape of Plaintiff. See Young, (WL 1529408).

### D. Plaintiff's Failure to File an Administrative Complaint about the Subject of this Complaint Deprives the Court of a Factual Record of the Alleged Events.

Plaintiff's failure to allege any rape or staff conspiracy until two years after the event defeats the other purpose of the PLRA by depriving the court of a factual record of events with temporal proximity, to the alleged events. Young, WL 1529408. Plaintiff first complained of alleged rape in 2009, alleging that he had given information to the C.D.C.R. and to a staff psychologist that he had previously been raped and was suffering from nightmares and paranoia as a result. (Doc. 27-7, at 32.) Plaintiff requested single cell status

as relief in his initial appeal and, in later appeals, requested a polygraph examination to prove that his allegations were true. (Doc. 27-7, at 32.) However, the alleged acts occurred at a completely different institution and more than two years prior to Plaintiff's first report. Because Plaintiff's appeals did not focus on a staff-orchestrated rape, they did not trigger any investigation of a rape. Rather, the only grievance remotely related to the presently alleged events served to trigger an evaluation of Plaintiff's eligibility for single cell status. (Doc. 27-7, at 35-36.) Thus, Plaintiff's long delay defeated one of the primary purposes of the PLRA - facilitating litigation - by depriving the court of a factual record created near in time to the alleged events.

For all of the foregoing reasons, Defendants met their burden in showing that Plaintiff failed to exhaust his administrative remedies. The Court therefore recommends dismissal of his federal claims without prejudice.

## II. Failure to State a Claim

As discussed above, Plaintiff failed to exhaust his administrative remedies for a rape claim. Therefore, the Court is left to determine whether there is any relief for which Plaintiff can plausibly state a cause of action. F.R.C.P. 12(b)(6). Based on Plaintiff's pleadings, the Court might construe his complaint as seeking damages for failure of the C.D.C.R. to provide a single cell to Plaintiff, for damages based on the alleged comments and statements made by Defendants Howard and Hernandez to Plaintiff, or for injunctive relief ordering a single cell going forward.

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp., 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, —–U.S. —–, —–, 129 S.Ct. 1937, 1949 (2009). The court does not look at whether the plaintiff will "ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Bell Atl. Corp., 550 U.S. at 563 n.8.

A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732

(citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside the pleadings.  Schneider v. Cal. Dep't of Corrs., 151 F.3d 1194, 1197 n.1 (9th Cir.1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir.1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir.1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n. 1.  *This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion* to dismiss brought pursuant to Rule 12(b)(6).  Schneider, 151 F.3d at 1197 n. 1 (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993) (emphasis added).

**A. Immunity**

The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state.  Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100  (1984)); S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 508 (9th Cir. 1990).  The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature. Id.  State departments of corrections are state agencies, immune from suit under §1983.  Taylor v. List, 880 F.2d 1040, 1044 (9th Cir. 1989).  The C.D.C.R. is immune from suit, and therefore, Plaintiff's complaint must be dismissed under F.R.C.P. 12(b)(6) because he has not alleged any conduct for which the defendants can be held liable.  Thus, the FAC lacks facts sufficient to state a claim to relief, plausible on its face.

Neither a State nor its officials acting in their official capacities are "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985))[1].  Official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation.  Id.

---

[1] However, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the state.  Will, 491 U.S. at 71 n.10 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)) (internal quotations and citations omitted).

Plaintiff sued Defendants Howard and Hernandez in their official capacities, (doc. 13, at 2) therefore, in order to survive dismissal as to those defendants, Plaintiff must demonstrate that a policy or custom of the C.D.C.R. was the moving force behind the violation. <u>Hafer</u>, 502 U.S. at 25. Plaintiff alleges that the C.D.C.R. has a policy of training its staff to be corrupt, (Doc. 13, at 6) and offers various media articles as well as the closing statement for the Corcoran State Prison hearings. (Doc. 39, at 23-60.) These items relate to the regrettable corruption that existed in Corcoran during the nineties, but have no bearing on whether or not Plaintiff was deprived of his Constitutional rights in 2007 at Centinela State Prison. (Doc. 39-2, at 8-20.) Moreover, Plaintiff offers these materials in conjunction with his Supplemental Response in Opposition to Defendant's Motion to Dismiss and Strike First Amended Complaint, which are materials the Court may not consider. <u>Schneider</u>, 151 F.3d at 1197 n.1.

"[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Bell</u>, 550 U.S. at 544 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). Nothing in Plaintiff's pleadings , other than Plaintiff's naked accusations that the C.D.C.R. is corrupt, tends to show that a policy or custom of the C.D.C.R. was the moving force behind his alleged rape. As soon as Plaintiff reported the rape, the C.D.C.R. made a report as required under the PREA and also created a record of his administrative grievance. (Doc. 30, at 13.) Plaintiff has failed to allege facts that support the inference that the C.D.C.R. had a policy or custom of covering up abuse. Therefore, Plaintiff has not pled facts sufficient to support the inference that any of the Defendants are liable for the alleged conduct.

### B. Plaintiff's Pleadings do not Support a Claim for Injunctive Relief

The C.D.C.R. as a State Agency, and Defendants Hernandez and Howard, in their official capacities, are immune from suit for money damages. However, individuals acting in their official capacity are not immune from suit for injunctive relief. <u>Will</u>, 491 U.S. at 71 n.10. Plaintiff's alleged injury occurred at Centinela State Prison and he is now an inmate at Calipatria State Prison. Moreover, Plaintiff has not alleged that Defendants Howard or Hernandez have any authority to grant him single cell status nor would their denial of such status if they had such authority amount to an Eighth Amendment violation. See *infra.* Therefore, even if the Court reads Plaintiff's complaint as one for injunctive relief regarding his housing status, he has failed to state such a claim.

### C. Plaintiff Failed to State a Cause of Action for Violation of his Eighth Amendment Rights

Even if this Court were to read Plaintiff's complaint as a complaint for denial of single status rather than for the a rape claim that is barred due to Plaintiff's failure to exhaust his administrative remedies, the complained of denial of single cell status does not amount to a violation of Plaintiff's Eighth Amendment rights.  A prison official violates the Eighth Amendment when the alleged deprivation is, objectively, sufficiently serious to result in the denial of the minimal civilized measure of life's necessities and constitutes unnecessary and wanton infliction of pain. Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (holding that prison staff may violate Eighth Amendment by ignoring a substantial threat to inmate safety and abandoning duty to protect prisoners from obvious danger of violence where prison officials were at least reckless in their disregard of the danger.)  Prison conditions may be "restrictive and even harsh." Rhodes, 452 U.S. 337 at 347.  Nonetheless, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833.

To state a claim for deprivation of Eighth Amendment rights, the prisoner must show that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id.  Thus, denial of single cell status does not violate the Eighth Amendment unless the defendant knows of and disregards an excessive risk to inmate health. Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002).  Plaintiff does not allege an ongoing threat to his health or safety that was disregarded by prison staff.  Even his initial appeal relating the rape only states that he suffered from "nightmares and paranoia." (Doc. 27-7, at 31.)  While unpleasant, nightmares and paranoia do not constitute a danger to the Plaintiff.  Moreover, § 1983 imposes liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights. Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691-94 (1978).  Plaintiff sued Defendants Howard and Hernandez in their official capacities.  Therefore, Plaintiff failed to state a cause of action against Defendants under 42 U.S.C. § 1983 for cruel and unusual punishment under the Eighth Amendment based on denial of single cell status.

Finally, this Court could construe Plaintiff's complaint as one for damages based on a violation of his Eighth Amendment rights due to the alleged comments made to Plaintiff by Defendants Howard and Hernandez.  However, verbal harassment generally does not violate the Eighth Amendment. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (implying a requirement that evidence that language be calculated to

cause psychological damage). Plaintiff alleges that Defendants told him they arranged for him to be raped and that they would keep him until the relevant statute of limitations ran. However, as discussed above, his actions, described in his own pleadings and accompanying documents, do not support the inference that Defendants' comments toward Plaintiff were calculated psychological harm. Plaintiff alleges that Defendants' comments were calculated to "keep him quiet." Contrary to supporting any inference that Plaintiff suffered psychological harm from Defendants' comments, Plaintiff's grievances and this complaint focus on seeking further investigations, such as polygraph testing, and on denial of single cell status. Therefore Plaintiff has not pled facts sufficient to support a claim for violation of the Eighth Amendment. Accordingly, Plaintiff's Eighth Amendment claims must be dismissed pursuant to F.R.C.P. 12(b)(6).

**D. Plaintiff's Complaint does not State Facts Sufficient to State a Claim for Violation of Equal Protection Under the Fifth and Fourteenth Amendments**

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike. City of Cleburne v. Cleburne Living Center, Ind., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim in one of two ways. The plaintiff may show that the defendants acted with the intent or purpose to discriminate against the plaintiff based on membership in a protected class. Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998). Alternatively, the plaintiff may show that similarly situated individuals were treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiff alleges that Defendants violated his Fifth and Fourteenth Amendment rights by covering up the actions of Howard and Hernandez. Plaintiff does not allege that he is a member of any protected class, however. Nor does he allege any disparate treatment. Therefore, his complaint does not state a cause of action under the Equal Protection Clause.

**E. Denial of Single Cell Status Is Not Sufficient to State a Claim for Violation of Due Process Under the Fifth and Fourteenth Amendments and Plaintiff's Rape Claim is Barred by the PLRA**

State law creates liberty interests deserving protection under the Fourteenth Amendment's Due Process Clause only when the deprivation in question restrains the inmate's freedom in a manner not expected from their sentence and imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). To state a claim under § 1983, a plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed

the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983; Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir.1986). That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. Davidson v. Cannon, 474 U.S. 344, 348 (1986) (implying that a deprivation of due process results when a corrections officer abuses governmental power, or employs it as an instrument of oppression.).

Prison officials, when performing their duties, act under state law. See West v. Atkins, 487 U.S. 42, 49-50 (1988) ("It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State."). Thus, Defendants Howard and Hernandez were acting under color of state law at all times with respect to Plaintiff, even if they abused their power. Common sense dictates that arranging for an inmate to be raped would impose a significant hardship atypical in relation to ordinary prison life. Thus, Plaintiff's rape allegations would be sufficient to state a cause of action under the Due Process clause. This claim, however, is barred by the PLRA, as discussed above. Defendants' denial of single cell status to Plaintiff does not impose an atypical and significant hardship on Plaintiff relative to the ordinary incidents of prison life as inmates are expected pursuant to C.D.C.R policy to double cell. Cal. Code Regs., tit. 15 § 3269. Therefore, allegations that Defendants' denied Plaintiff single cell status are not sufficient to state a cause of action.

**III. Motion to Strike**

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." F.R.C.P. 12(f); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Defendants argue that, under this Rule, courts have authority to strike a prayer for relief seeking damages that are not recoverable as a matter of law. Wilkerson v. Butler, 229 F.R.D. 166, 172 (E.D. Cal. 2005) (striking a cause of action for punitive damages because it added nothing to the complaint.).

Defendants are correct in asserting that Defendants Howard and Hernandez, having been sued in their official capacity, are immune from money damages and Defendant C.D.C.R. is immune from suits for damages as a State Agency. Defendants are incorrect, however, in asserting that this court "must" strike Plaintiff's damages claims. (Doc. 31, at 15.) On the contrary, motions to strike will usually be denied unless

the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. Augustus v. Board of Public Instruction, 306 F. 2d 862 (5th Cir. 1962); Scelta v. Delicatessen Support Servs., Inc., 57 F. Supp. 2d 1327, 1347 (M.D. Fla. 1999); Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M, WL 4807619, at *1 (W.D.Okla., 2009) ("While motions to strike are generally disfavored, the decision to grant a motion to strike is within the discretion of the court."). "Striking a pleading or part of a pleading is a 'drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored." Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE-FHM, (WL 132414, at *5 (N.D.Okla., 2010). Finally, Rule 12(f) motions have been termed "time wasters" because they are so rarely granted. Somerset Pharms, Inc. v. Kimball, 168 F.R.D. 69, 71 (M.D. Fla. 1996); Lane v. Page, —F.R.D.—, (D.N.M. 2011) (WL693176). Accordingly, this Court declines to strike Plaintiff's damages claims as they have already been addressed in Defendant's Motion to Dismiss.

## CONCLUSION

For the reasons set forth above, the Court recommends granting Defendants' Motion to Dismiss and Denying Defendants' Motion to Strike.

This Report and Recommendation is submitted to United States District Judge Sammartino, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before **July 5, 2011**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **July 19, 2011**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: June 14, 2011

Peter C. Lewis
U.S. Magistrate Judge
United States District Court

cc: The Honorable Sammartino
All parties